## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MICROSOFT CORPORATION and
MICROSOFT LICENSING, GP

      Plaintiffs,

   v.

EBIX, INC.

      Defendants.

Case No. 1:13-cv-01655-CAP

## DEFENDANT EBIX, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1)

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1),

Defendant Ebix, Inc. ("Ebix") respectfully submits this Memorandum of Law in

Support of Its Motion to Dismiss the Complaint of Plaintiffs Microsoft Corporation

and Microsoft Licensing, GP (both Plaintiffs, collectively, "Microsoft").  As set

forth more fully herein, Microsoft's Complaint against Ebix should be dismissed,

with prejudice, in its entirety.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................ii

I. INTRODUCTION ................................................................. 1

II. BACKGROUND ................................................................. 2

III. LEGAL STANDARD ........................................................... 4

IV. ARGUMENT AND CITATION TO AUTHORITY .............................. 6

    A.   Ebix's Alleged Copying of Microsoft Software Without
         Payment Would Constitute A Breach Of A Covenant—Not A
         Condition—Of The License Agreement and Therefore Cannot
         Constitute Copyright Infringement. ................................... 6

    B.   Microsoft's Remaining State Law Claims Must Be Dismissed
         Because It Has Not—And Cannot—Plead An Amount In
         Controversy Sufficient To Satisfy Subject Matter Jurisdiction
         For Those Claims. ......................................................... 13

V. CONCLUSION ................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................4

*Bradley v. Kelly Servs., Inc.*,
224 F. App'x 893 (11th Cir. 2007) ........................................................14

*Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*,
661 F.2d 479 (5th Cir. 1981) ...................................................................7

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*,
329 F.3d 805 (11th Cir. 2003) ..............................................................14

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998) .........................................................6, 7, 10

*Jacob Maxwell, Inc. v. Veeck*,
110 F.3d 749 (11th Cir. 1997) .......................................................6, 7, 8, 10

*Jacoby v. Grays Harbor Chair & Mfg. Co.*,
468 P.2d 666 (Wash. 1970) .................................................................7, 9

*Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*,
387 F. Supp. 2d 521 (M.D.N.C. 2005) ...........................................10, 11

*McDonald v. State Farm*,
837 P.2d 1000 (Wash. 1992) ............................................................8, 10

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
501 F.3d 1244 (11th Cir. 2007) ..............................................................5

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ..............................................................5

*Ross v. Harding*,
   391 P.2d 526 (Wash. 1964) ...........................................................................8, 9

*Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*,
   767 F. Supp. 2d 392 (E.D.N.Y. 2011) ................................................................9

*Salus v. One World Adoption Servs., Inc.*,
   No. 1:12-CV-894, 2012 WL 3756611 (N.D. Ga. Aug. 27, 2012).....................15

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) .........................................................................5

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938)..........................................................................................14

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   81 F. Supp. 1026 (N.D. Cal. 2000)..............................................................9, 10

*Taylor v. Appleton*,
   30 F.3d 1365 (11th Cir. 1994) ...........................................................................3

*Topolos v. Caldeway*,
   698 F.2d 991 (9th Cir. 1983) ...........................................................................12

## RULES

Fed. R. Civ. P. 10(c)...............................................................................................3

Fed. R. Civ. P. 12(b)(1).................................................................................5, 14, 15

Fed. R. Civ. P. 12(b)(6)..................................................................................4, 5, 13

## STATUTES

28 U.S.C. § 1331 ...................................................................................................13

28 U.S.C. § 1332....................................................................................................6, 14

28 U.S.C. § 1338(a) ...............................................................................................13

**OTHER AUTHORITIES**

Brief of Appellant, *Microsoft Corp. v. Sun Microsystems, Inc.*,
    188 F.3d 1115 (9th Cir. Jan. 13, 1999) (No. 99-15046), 1999 WL
    33623203...........................................................................................................12

# I. INTRODUCTION

Ebix, Inc. ("Ebix") provides software and e-commerce solutions to insurance companies.  Through both its standard and custom products, it seeks to streamline the transactions and data transfers that occur in the insurance industry.  The company was founded in 1976 as Delphi Information Systems, Inc. Ebix was ranked 4th in FORTUNE Magazine's 2011 rankings of the fastest growing technology companies, and now has offices in ten countries.

Microsoft Corporation and Microsoft Licensing, GP (collectively, "Microsoft") allege that they have been underpaid by Ebix under a license agreement between the parties governing Ebix's use of Microsoft software. Though the agreement gives Microsoft a right to audit Ebix's use of Microsoft software, the agreement is almost totally devoid of details on what procedures such an audit might entail and what legal protections are available to Ebix related to its internal computer systems and the private, sensitive data housed within.  Because the parties have failed to reach an agreement on the terms of an audit, no audit of Ebix's use of Microsoft software has yet occurred.  The situation between the parties is a contract dispute—nothing more.

Microsoft's Complaint includes, however, a copyright claim in addition to its state law claims.  This copyright claim, with its attendant possibility of statutory

damages, costs, and attorney's fees, was likely intended to intimidate Ebix into quickly complying with an audit on unfavorable terms.  But because Ebix is a licensee of Microsoft's products, as is more fully discussed below, it cannot be liable for copyright infringement, and this claim must therefore be dismissed.

Microsoft's remaining claims are all based on state law, meaning that this court only has jurisdiction to hear those claims if Microsoft has adequately pled complete diversity of citizenship and damages in excess of $75,000.  As discussed below, it has not, as its Complaint merely asserts an indeterminate amount of damages in excess of the jurisdictional minimum, and Microsoft has pled no facts by which any calculation of potential damages could be made.  Accordingly, the remaining claims in Microsoft's Complaint must also be dismissed.

## II. BACKGROUND[1]

Microsoft and Ebix are parties to a "Select Plus" volume licensing agreement.  (Dkt. 1, Compl. ¶¶ 6, 18 ). This arrangement is governed by the terms of several agreements, which are collectively referred to in the Complaint and in

---

[1] Ebix sets forth Microsoft's allegations because they must be taken as true for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). By setting out the allegations here, Ebix does not in any way admit the allegations or agree that they in fact have merit.

this Motion as the "License Agreement."[2]  The License Agreement governs the

terms by which Ebix may copy and use Microsoft software products.  (*Id.*).  The

License Agreement grants Ebix the right to run copies of Microsoft's software, and

to later submit orders and payment for those copies to an authorized reseller who

determines price and other payment terms.  (*Id.*, Ex. 2, Section 4(a) & (c), 6(a),

7(a), at pp. 3-6).[3]  The License Agreement also allows Microsoft to audit Ebix's

compliance with the agreement's terms through either a third-party verification

procedure or a self-audit questionnaire.  (*Id.*, Ex. 1, Section 8(a) & (b), at p. 8).

Ebix can remedy any non-compliance revealed by an audit by, within 30 days of

the audit's completion, paying for any uses in excess of its current allotment.  (*Id.*,

Ex. 1, Section 8(c), at p. 9).

Microsoft alleges that it believes Ebix is "under-licensed" for Microsoft

software, and that therefore Microsoft attempted to avail itself of the audit

---

[2] Specifically, these agreements include the (a) Microsoft Business and Services
Agreement; (b) Select Plus Agreement; (c) Select Plus Affiliate Registration Form;
and (d) Select Plus Signature Form. Copies of these documents are attached to the
Complaint as Exhibits 1-4, respectively.

[3] Fed. R. Civ. P. 10(c) states that "[a] copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all purposes."  *See also Taylor v.
Appleton*, 30 F.3d 1365, 1367 n.3 (11th Cir. 1994) (noting, regarding an
attachment to the complaint, "the document relied on by the district court was part
of the pleadings, [and thus] the 12(b)(6) motion was not converted to a motion for
summary judgment").

procedures under the License Agreement. (*Id.*, ¶ 23). Though Microsoft and Ebix discussed the manner in which the audit would be conducted, an audit did not occur, and Microsoft filed this lawsuit. (*Id.*, ¶ 9). Microsoft has asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*Id.*, ¶ 1). Despite the existence of the License Agreement, however, Microsoft has also asserted a claim for copyright infringement. (*Id.*).

On its copyright claim, Microsoft seeks an award of either actual damages or statutory damages. (*Id.*, ¶¶ 48; Prayer for Relief ¶¶ D, E). Microsoft also seeks compensatory damages for the state law claims in an amount that it alleges "exceeds the jurisdictional minimum of this Court." (*Id.*, ¶ 14). Specifically, Microsoft states the amount of compensatory damages will be "determined according to proof" or "proven at trial." (*Id.*, ¶¶ 56, 61).

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the plaintiff's claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility standard is not quite a "probability requirement," but is certainly more than a "possibility." *Id.* In evaluating a Rule 12(b)(6) motion, a court must distinguish between factual allegations, which are taken as true, from legal conclusions, which are not. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (citing *Iqbal*, 556 U.S. at 680). The court then determines whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680).

The standard of review is similar for a facial attack to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (noting that in a Rule 12(b)(1) facial challenge a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised"). In evaluating a facial attack—one based on the face of the pleadings such as Ebix's challenge here—the court therefore evaluates whether the claim for subject matter jurisdiction is "plausible on its face." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). As with a Rule 12(b)(6) motion, the plaintiff's well-pled facts are taken as true, while bare legal conclusions are not. *Id.* (citing *Iqbal*, 556 U.S. at 678). Accordingly, for ease of reference, Ebix refers to the Rule 12(b)(6) standard throughout this motion.

## IV. ARGUMENT AND CITATION TO AUTHORITY

Under the facts alleged in Microsoft's Complaint, Ebix is a valid licensee of Microsoft's software products, and therefore cannot be liable for copyright infringement. As shown below, Ebix's alleged actions amount to, on the face of the pleadings, a breach of the License Agreement's covenants—not conditions. When a breach is of a covenant to the license, as opposed to a condition, the licensor's action is one for breach of contract, not copyright infringement. *Graham v. James*, 144 F.3d 229, 236–37 (2d Cir. 1998). Microsoft's copyright claim must therefore be dismissed. Without the copyright claim, Microsoft's remaining state law claims must be dismissed because Microsoft has not—and cannot—plead an amount in controversy sufficient to satisfy the requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**A.     Ebix's Alleged Copying of Microsoft Software Without Payment Would Constitute A Breach Of A Covenant - Not A Condition - Of The License Agreement and Therefore Cannot Constitute Copyright Infringement.**

The "essence" of a nonexclusive license is a promise that the licensor will not sue the licensee for copyright infringement. *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997)). A licensee's breach of a license agreement does not automatically give rise to a claim for copyright infringement. Indeed, a licensee can only potentially be liable to its licensor for copyright infringement

when the licensee's actions breach a *condition*, as opposed to a *covenant*, of the license. *Graham*, 144 F.3d at 236–37 (citing *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483–84 (5th Cir. 1981)).

Microsoft's claim, as alleged, is properly one for breach of contract, not copyright infringement.  Ebix's alleged failure to pay for each copy of Microsoft software it has run is, at most, a breach of a covenant in the License Agreement. Such a breach gives rise only to the remedies specified in the contract for non-payment—not copyright infringement damages.

To determine whether a term of a copyright license agreement is a covenant or a condition, courts look to state law rules of contract interpretation.  *Jacob Maxwell*, 110 F.3d at 752 n.2.  The License Agreement is to be interpreted under Washington state law.[4]  Such contracts should be interpreted to give effect to "the intent of the parties . . . by viewing the contract as a whole in light of the circumstances and conduct surrounding the making of the contract."  *Jacoby v. Grays Harbor Chair & Mfg. Co*., 468 P.2d 666, 670 (Wash. 1970).  Any

---

[4] The License Agreement contains a provision stating that Washington law governs its terms.  (Compl., Ex. 1, Section 13(h), at p. 11) ("The terms of any License Agreement entered into with any Microsoft Affiliate located outside of Europe will be governed by and construed in accordance with the laws of the State of Washington and federal laws of the United States.").  Ebix therefore cites to decisions of the Washington state courts for contract interpretation principles.

interpretation of a contract's language should give effect to each provision. *McDonald v. State Farm,* 837 P.2d 1000, 1005 (Wash. 1992).  Though words such as "on condition," "so that," and "provided that" are often used to create contract conditions, they only do so when contract interpretation principles encourage such an interpretation, and where it is unclear whether a contractual term is a condition or a covenant, it should be interpreted as a covenant.  *Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964) (noting that the above phrases, among others, may create conditions "when properly interpreted," but also noting "[w]here it is doubtful whether words create a 'promise' or an 'express condition,' they are interpreted as creating a 'promise'"); *see also Jacob Maxwell*, 110 F.3d at 754 ("Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language.").

Here, the License Agreement provides that Ebix may run as many copies as it wants, "provided that it submits Orders for all Licenses in the month in which those copies are first run."  (Compl., Ex. 2, Section 4(a), at p. 3).  Elsewhere, the License Agreement requires Ebix to remedy any failure to submit orders for the copies it runs, which the License Agreement refers to as "non-compliance," by simply paying for those uses for which orders have not yet been submitted.  (*Id.*, Ex. 1, Section 8(c), at p. 9).  While Microsoft may argue that the words "provided

that" make order placement a condition, the License Agreement's reference to the failure to submit orders as "non-compliance" suggests it is in fact a covenant.  *See Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 767 F. Supp. 2d 392, 409 (E.D.N.Y. 2011) (holding that the terms of an agreement were covenants, and not conditions, where failure to satisfy those terms was "explicitly" labeled in the license as a "violation" of the agreement, and not a "failure to fulfill a condition precedent").  At a minimum, the contract is ambiguous as to whether order placement and payment are covenants or conditions, and Washington law therefore instructs that the order and payment terms should be interpreted as covenants, not conditions.  *Ross*, 391 P.2d at 531; *see also Jacoby*, 468 P.2d at 671 (noting that under Washington law, an ambiguous contract is construed against the drafter).

Moreover, the fact that the License Agreement includes a contractual, monetary remedy for "non-compliance" indicates the parties' intent that the promise to submit orders for copies be considered a covenant within the license, not a condition to the license.  *See Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026, 1032–33 (N.D. Cal. 2000) (holding that thirty-day period to cure any material breach after notice of said breach indicated that license terms pertaining to software compatibility were covenants, not limitations to the license's scope).  Allowing Microsoft to sue for copyright infringement before Ebix has had

the benefit of the provision allowing it to cure "non-compliance" within 30 days of the audit would render that portion of the License Agreement meaningless.  *See id.* ("If Sun could sue for copyright infringement immediately upon Microsoft's failure to fully meet the compatibility requirements, the remedies scheme would be frustrated and Microsoft would not get the full benefit of its bargained for cure periods.").  Because "[a]n agreement should be interpreted in a way that gives effect to each provision," the promise to submit orders and pay for the software Ebix runs must be read as a covenant in order to give effect to the provision pertaining to cure of non-compliance.  *McDonald*, 837 P.2d at 1005.

Holding that Ebix's promise to submit orders and pay for the software it runs as a covenant is consistent with several other cases in which "[c]ourts have held payment terms are covenants where permission precedes payment."  *Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 534 (M.D.N.C. 2005); *see also Graham*, 144 F.3d at 237 (holding defendant's promise to pay was a covenant where plaintiff "turned over the [copyrighted work] for use before any royalties were paid"); *Jacob Maxwell*, 110 F.3d at 753 (holding defendant baseball team's promise to pay plaintiff songwriter was a covenant where plaintiff granted team permission "to play his song at the next day's game even though he had not yet been paid").

The present case is quite similar to the situation in *Madison River*.  There, the plaintiff entered into a license agreement allowing it to access defendant's database.  *Madison River*, 387 F. Supp. 2d at 528.  The agreement stated that, within 30 days, plaintiff would pay for any use it made of the database exceeding the fifteen licenses it had already purchased.  *Id.*  When the plaintiff failed to pay the invoices for its excess use and sought a declaratory judgment that its actions did not constitute copyright infringement, the defendant counterclaimed for copyright infringement.  *Id.* at 533.  The court, however, held that the plaintiff's excess use of the database could not be copyright infringement, because its promise to pay for that use was a covenant, not a condition:

> No part of the Agreement or grant of the license is conditioned upon payment for the excess use. The Agreement presupposes that excess use comes before payment, essentially granting permission for the excess use and then requiring payment for it. . . . Because the payment term is a covenant of the Agreement, Defendant's remedy does not lie in copyright infringement, but in breach of contract.

*Id.* at 534.

Like the agreement in *Madison River*, Microsoft has granted Ebix the right to run copies of its software, and Ebix has made a contractual covenant to pay for those copies.  Microsoft alleges that Ebix has made copies of Microsoft software for which it has not submitted orders or paid.  Accordingly, Ebix's alleged failures

constitute, at most, a breach of the License Agreement—not copyright infringement.  Microsoft has not alleged that the License Agreement has been rescinded; Ebix therefore remains a valid licensee.  As such, Ebix's copying of Microsoft's software cannot constitute copyright infringement.

Interestingly, Microsoft has successfully argued much the same point to the Ninth Circuit Court of Appeals, and then again on remand to the U.S. District Court for the N.D. California.  Indeed, when Microsoft was in Ebix's position in a similar contract dispute, it argued that the provisions of a license agreement it allegedly breached were covenants, and not conditions, to the license agreement:

> To determine when a claim arises under the Copyright Act, "[c]ourts have directed inquiry to what they have variously described as the 'primary and controlling purpose' of the suit, the 'principal issue,' the 'fundamental controversy,' and the 'gist' or 'essence' of the plaintiff's claim." *Id.* The underlying reasoning of *Topolos* and related cases is that, when the focus of a claim is on the terms of a consensual agreement between the parties, the role of the court is to enforce the parties' intent as expressed in their agreement, not solely to protect the copyright holder.

Brief of Appellant, *Microsoft Corp. v. Sun Microsystems, Inc.*, 188 F.3d 1115 (9th Cir. Jan. 13, 1999) (No. 99-15046), 1999 WL 33623203 at *22 (quoting and citing *Topolos v. Caldeway*, 698 F.2d 991, 993 (9th Cir. 1983)).  Here, Microsoft's Complaint, as a whole, reads as a contract dispute; even the copyright infringement claim is rooted in alleged breaches of the License Agreement.  The "fundamental

controversy" between Ebix and Microsoft is a commercial dispute between sophisticated companies over whether Ebix has breached its obligations under the License Agreement, not whether Microsoft's copyrights have been infringed.

In conclusion, Ebix's alleged failure to pay in full for licenses under the License Agreement may, at most, subject it to liability for the damages provided for in the agreement.  It does not, as shown above, amount to the failure of a condition to the License Agreement.  Ebix remains, therefore, a licensee of Microsoft's software regardless of any failure of payment, and any copying of that software cannot subject Ebix to copyright liability.  It is not only improbable, but impossible, that Microsoft's allegations state a claim for copyright infringement. Accordingly, Microsoft's claim should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B.    Microsoft's Remaining State Law Claims Must Be Dismissed Because It Has Not—And Cannot—Plead An Amount In Controversy Sufficient To Satisfy Subject Matter Jurisdiction For Those Claims.**

If the Court grants Ebix's Motion to Dismiss Microsoft's claim for copyright infringement, the Court will no longer have subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  The remaining counts of the Complaint are state law claims for breach of contract (Count 2), breach of the implied covenant of good faith and fair dealing (Count 3), and unjust enrichment (Count 4).  Without a

copyright claim providing federal-question jurisdiction, this Court only has subject matter jurisdiction over the remaining state law claims if Microsoft has adequately pled diversity jurisdiction under 28 U.S.C. § 1332.  Microsoft has failed to do so, and therefore the remaining counts of the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

To satisfy the requirements for subject-matter jurisdiction based on diversity, there must be both complete diversity of citizenship and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  Typically, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  This rule changes, though, when a plaintiff claims diversity jurisdiction by citing "indeterminate damages."  *Id.*  In such a case, the party invoking federal jurisdiction "bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  *Id.*  A plaintiff cannot simply state that the amount exceeds the jurisdictional minimum; it must instead allege specific calculations showing the jurisdictional minimum has been met.  *See Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) (affirming motion to

dismiss for lack of subject matter jurisdiction where plaintiff had provided no calculation as to the damages she was owed beyond "conclusory assertions" that they exceed the jurisdictional minimum); *Salus v. One World Adoption Servs., Inc.*, No. 1:12-CV-894, 2012 WL 3756611, *3 (N.D. Ga. Aug. 27, 2012) (granting defendants' motion to dismiss where the only specific damages calculations pled by plaintiff totaled less than $75,000).

Microsoft has merely stated, in conclusory fashion, that "the amount in controversy exceeds the jurisdictional minimum of this Court."  (Compl., ¶ 14). Elsewhere in the Complaint, it states the amount of compensatory damages resulting from the contract claims will be "proven at trial," (*Id.* ¶ 56), or "determined according to proof." (*Id.* ¶ 61).   Tellingly, Microsoft has not alleged any facts relating to its purported damages whatsoever, let alone facts sufficient for the Court to determine whether Microsoft's Complaint meets the jurisdictional minimum for diversity jurisdiction.  Microsoft has not met its burden of showing by a preponderance of the evidence that that jurisdictional minimum has been met. Microsoft's remaining state law claims must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## V. CONCLUSION

For the reasons set forth herein and on the authorities cited, Microsoft's claims should be dismissed in their entirety.

Respectfully submitted, this 10th day of July, 2013.

/s/ Jason D. Rosenberg

Jason D. Rosenberg, Esq.
jason.rosenberg@alston.com
Georgia Bar No. 510855
Kathryn W. Bina, Esq.
kitty.bina@alston.com
Georgia Bar No. 956052
Uly S. Gunn, Esq.
sam.gunn@alston.com
Georgia Bar No. 261871

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

Counsel for Defendant Ebix, Inc.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C</u>

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1C in Times New Roman font, 14 point type.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date filed the foregoing DEFENDANT EBIX, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1), via the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 10th day of July, 2013.

/s/ *Uly S. Gunn*

_____

Uly S. Gunn